**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cynthia Wendte,<br><br>            Plaintiff,<br><br>vs.<br><br>Carolyn W. Colvin,[1] Acting Commissioner of the Social Security Administration,<br><br>            Defendant. | No. CV-12-1523-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the appeal of Plaintiff Cynthia Wendte, which challenges the Social Security Administration's decision to deny benefits. (Doc. 1.) For the reasons set forth below, the Court vacates that decision and remands for further proceedings.

## BACKGROUND

Wendte claims that she has been disabled since September 30, 1999. (R. at 15.) She is currently 35 years old and completed ninth grade. (*Id.* at 1311–12.) Wendte does not appear to have relevant employment prior to the onset of her alleged disability. (*Id.* at 21.) Wendte submitted a Title II application for disability and disability benefits on April 4, 2008, and a Title XVI application on April 15, 2005. (*Id.* at 40.) The Social Security

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Carolyn W. Colvin is substituted for Michael J. Astrue as the Defendant in this suit.

Administration ("SSA") denied her claims on August 21, 2008, and again on December 31, 2008. (*Id.*) Wendte subsequently requested a hearing, which was held on April 20, 2010 in Phoenix, Arizona. (*Id.*) On November 18, 2009, the Administrative Law Judge ("ALJ") issued a decision finding that Wendte was not disabled under sections 216(i) and 223(d) of the Social Security Act. (*Id.* at 13.) That decision was reversed by the Appeals Council and the case was remanded back to the ALJ with instructions to re-consider several pieces of evidence. (*Id.*) The ALJ held another hearing and issued a second decision on December 22, 2011, again finding that Wendte was not disabled within the meaning of the Act. (*Id.* at 22.)

To determine whether Wendte was disabled, the ALJ undertook the five-step analysis detailed at 20 C.F.R. §§ 404.1520(a) and 416.920(a).[2] (R. at 14.) He determined at the first step that Wendte had not engaged in substantial gainful activity since September 30, 1999, the alleged onset date. (*Id.* at 15.) The ALJ then found that Wendte had the following impairments that are severe in combination: congenital heart block, cardiomyopathy, chronic heart failure, status-post defibrillator and pacemaker implantation, and depression secondary to her general medical condition. (*Id.* at 16.) At

---

[2] Under the test:

> A claimant must be found disabled if she proves: (1) that she is not presently engaged in a substantial gainful activity[,] (2) that her disability is severe, and (3) that her impairment meets or equals one of the specific impairments described in the regulations. If the impairment does not meet or equal one of the specific impairments described in the regulations, the claimant can still establish a prima facie case of disability by proving at step four that in addition to the first two requirements, she is not able to perform any work that she has done in the past. Once the claimant establishes a prima facie case, the burden of proof shifts to the agency at step five to demonstrate that the claimant can perform a significant number of other jobs in the national economy. This step-five determination is made on the basis of four factors: the claimant's residual functional capacity, age, work experience and education.

*Hoopai v. Astrue*, 499 F.3d 1071, 1074-75 (9th Cir. 2007) (internal citations and quotations omitted).

step three, the ALJ determined that none of these impairments, either alone or in combination, met or equaled any of the SSA's listed impairments. (*Id.* at 17–18.)

At that point, the ALJ made a determination of Wendte's residual functional capacity ("RFC"),[3] concluding that she could perform sedentary unskilled work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following restrictions: she cannot crawl, crouch, climb, squat or kneel, and she should not be exposed to extremes of temperature or humidity or unusual dust, gases, or fumes. (R. at 18.) Still at step four, the ALJ concluded that Wendte did not have any past relevant work. (*Id.* at 21.) The ALJ therefore reached step five and found (with the assistance of a vocational expert ("VE")) that Wendte was not disabled because there are jobs that exist in significant numbers in the national economy that she could perform. (*Id.* at 21–22.) The Appeals Council declined to review the decision. (*Id.* at 4–6.)

Wendte filed the Complaint in this action on July 16, 2012, seeking the Court's review of the ALJ's denial of benefits. (Doc. 1.) The matter became fully briefed on January 17, 2013. (Docs. 15, 19, 20.)

## DISCUSSION

**I.   LEGAL STANDARD**

A reviewing federal court will address only the issues raised by the claimant in the appeal from the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). A federal court may set aside a denial of disability benefits when that denial is either unsupported by substantial evidence or based on legal error. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). Substantial evidence is "more than a scintilla but less

---

[3] In greater detail, a residual functional capacity ("RFC") is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96–8p. In particular, the RFC assessment must describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* The RFC determination may be based on a wide variety of evidence in the record–the claimant's medical history, laboratory findings, the effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributable to a medically determinable impairment, evidence from attempts to work, the need for a structured living environment, and work evaluations. *Id*

than a preponderance." *Id.* (quotation omitted). It "is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (quotation omitted).

Subject to the Ninth Circuit's standards in particular cases, the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). This is so because "[t]he [ALJ] and not the reviewing court must resolve conflicts in evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted).

## II. ANALYSIS

Wendte argues that the ALJ erred by: (A) improperly discounting the opinions of her treating cardiologist and other doctors, (B) relying on the VE's opinion at Step Five when that opinion was offered in response to incomplete information about Wendte's symptoms, (C) improperly discounting Wendte's own testimony regarding the severity of her symptoms, and (D) improperly rejecting all third party witness statements.

### A.   Improper Discount of Wendte's Treating Cardiologist

Wendte claimed that the ALJ improperly discounted the opinions of her treating cardiologist on the effect of her symptoms. The regulations craft a hierarchy for medical opinions offered by licensed doctors. The opinion of a treating physician is given more weight than non-treating and non-examining medical sources. *See Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); 20 C.F.R. § 404.1527. When the treating doctor's opinion is uncontradicted, the ALJ can reject those conclusions only for "'clear and convincing' reasons." *Lester*, 81 F.3d at 830 (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Even when another doctor disagrees with the treating doctor's opinion, the ALJ can reject the treating

doctor's conclusions only when he provides "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).[4] In the words of the Commissioner, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." SSR 96-6p.[5] And so "the opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." *Id.*

Opinions on the ultimate issue of disability, however, are not considered medical opinions, and do not receive the same level of deference according to the SSA regulations. 20 C.F.R. § 404.1527(d). That issue is reserved for the ALJ. *Id.* Although the ALJ is not "bound" by a controverted opinion of the treating physician on disability, he can reject that opinion only by citing "specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998); *Lester*, 81 F.3d at 830. In reality, then, the "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion." *Reddick*, 157 F.3d at 725.

The ALJ specifically addressed the opinion offered by Wendte's treating cardiologist, Dr. Andy Tran. (R. at 20.) He gave limited weight to the opinions of Dr. Tran that were found in the medical source statements because he found those

---

[4] Some of the factors an ALJ can consider when deciding whether to reject the opinion of a treating doctor are the "'[l]ength of the treatment relationship and the frequency of examination' by the treating physician; and the 'nature and extent of the treatment relationship' between the patient and the treating physician." *Orn*, 495 F.3d at 631 (quoting 20 C.F.R. § 404.1527(c)(2)(i)-(ii)).

[5] Social Security Rulings (SSRs) "do not carry the 'force of law,' but they are binding on ALJs nonetheless." *Bray v. Comm'r Soc. Sec. Admin.,* 554 F.3d 1219, 1224 (9th Cir. 2009). They "'reflect the official interpretation of the [SSA] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations.'" *Id.* (alteration in original) (quoting *Avenetti v. Barnhart,* 456 F.3d 1122, 1124 (9th Cir. 2006)).

conclusions (namely, that Wendte could not work) inconsistent with Dr. Tran's other observations that appeared in the record and "the great weight of the other evidence of record." (*Id.*) Since the ALJ has not pointed to opinions from any other doctor that directly contradict Dr. Tran's conclusions, either on the general medical question or on the question of disability, he must articulate clear and convincing reasons, supported by substantial evidence in the record, for discounting Dr. Tran's opinion.

Wendte has had a pacemaker since she was nine years old. (*Id.* at 16.) Malfunctions over the years have required replacement of the pacemaker. (*Id.*) Wendte began seeing Dr. Tran in 2006. (*Id.*) He performed heart surgery on her in October 2007 that was only partially successful. (*Id.* at 518.) Dr. Tran consistently reported that Wendte regularly experienced dizziness, palpitations, and lightheadedness that sometimes resulted in emergency room visits. (*Id.* at 462, 489, 904–63.) There was some variation in the reporting of symptoms of lightheadedness or palpitations over that period, but the symptoms of shortness of breath appeared to worsen in 2011. (*Id.* at 904–63.) Dr. Tran had instructed Wendte that she was to sit or lie down when she experiences these symptoms. (*Id.* at 510, 957, 963.)

Dr. Tran filled out a Physical Residual Functional Capacity Questionnaire in September of 2011. (*Id.* at 288–92.) He diagnosed Wendte with complete heart block, junctional tachycardia, cardiomyopathy, and CHF. While he pronounced her prognosis as "good", he observed present symptoms of fatigue, palpitations, and syncope. (*Id.*) He opined that her symptoms would frequently interfere with her ability to perform work tasks, and that Wendte would need unscheduled hourly breaks of 10-15 minutes. (*Id.*) In addition, he determined that she would likely miss around three full days of work each month. (*Id.*) Those observations and opinions were consistent with those he made on similar questionnaires in July 2011 and February 2010. (*Id.* at 643–47, 649–53.) He completed other questionnaires in June and December 2007, in which he opined that she would not be able to work due to her heart problems. (*Id.* at 391–96, 635.)

In affording limited weight to Dr. Tran's disability opinion, the ALJ cited

inconsistency between Dr. Tran's opinions on Wendte's residual functional capacity and his treatment notes. Inconsistency can be a clear and convincing reason for rejecting opinion evidence from a treating physician. *See, e.g.*, *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999). For example, Dr. Tran's notes reflect a change in prognosis from "guarded" to "good" from 2007 to 2011, while he was opining over the same period that Wendte was unable to work. (*Id.* at 20.) In addition, Dr. Tran classified Wendte's heart condition as a class II-III under the New York Heart Association's criteria in June 2007, but changed that classification to class I-II in December 2008, which indicates more mild symptoms. (*Id.*) The ALJ could properly find that both of these changes undermined Dr. Tran's specific opinion about Wendte's ability to work. A change in prognosis is likely to be based on the physician's observation of the patient's symptoms and the effect on those symptoms of the current treatment regime. Moreover, the change in classification is a direct reflection of improved symptoms. In contrast to these observations, Dr. Tran continually opined that Wendte would be unable to work. The ALJ could therefore appropriately find that these statements were inconsistent, and that the inconsistency was a substantial reason to give Dr. Tran's opinion less weight.

The ALJ also cited an October 2007 report that Wendte was no longer exhibiting severe tachycardiac symptoms or palpitations as evidence that Wendte's symptoms were not as serious as Dr. Tran claimed in his questionnaire. (*Id.*) Although the ALJ here references only the October 2007 report, he previously discussed another report from December 2008 where Wendte reported no palpitations or chest pains. (*Id.* at 17.) It is true those symptoms reappear in numerous subsequent reports. (*See, e.g.*, *id.* at 288–92.) Yet there is also evidence that the symptoms improved from time to time. Wendte contends that the opinions that would have strongest bearing on the question of disability were consistent: the daily effect of Wendte's symptoms, amount of time expected to miss, need for unscheduled hourly breaks, and diagnoses. Nevertheless, it is not the role of this Court to reevaluate and reweigh the evidence. There is substantial evidence to

support the ALJ's determination that Dr. Tran's opinions on Wendte's ability to work were inconsistent with other observations on the severity of her symptoms.

Nevertheless, the Court notes that a state examiner, Dr. Stanley Levin, evaluated Wendte for the Arizona Department of Economic Security in August of 2006. He pronounced her unable to work, with a poor prognosis for recovery. (*Id.* at 371–74, 641.) While Dr. Levin deferred to Dr. Tran on the severity of Wendte's heart problems, an opinion of an examining physician that Wendte was unable to work is favorable evidence that should have been addressed by the ALJ. Generally, errors are harmless where they are "inconsequential to the ultimate nondisability determination." *Molina*, 674 F.3d at 1115 (quoting *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). Thus, for example, errors are harmless if the record shows that "the ALJ would have reached the same result absent the error" or "it was clear [the errors] did not alter the ALJ's decision." *Id.* Although Dr. Levin specifically examined Wendte and determined that she was unable to work, the main basis for his conclusion was Wendte's heart problems and he deferred to the determinations of Dr. Tran in that regard. Dr. Levin's conclusions therefore would not have affected the ALJ's ultimate nondisability determination. Since the Court has concluded that the ALJ did not impermissibly discount Dr. Tran's opinion, and the ALJ would apply that same reasoning to the conclusions of Dr. Levin (which are derivative of Dr. Tran's opinions), then any error in not considering Dr. Levin's opinion was harmless.

### B.     The ALJ's Reliance on Allegedly Incomplete Testimony from the VE

Wendte claims that the ALJ erred at step five. Once the ALJ reaches the fifth step of the sequential analysis, the regulations require the ALJ to consider the claimant's RFC and relevant vocational factors (age, education, and work experience) to determine whether the claimant can "make an adjustment to other work." 20 C.F.R. § 416.920(g). In other words, the burden shifts from the claimant to the ALJ at the fifth step. Now the Commissioner "must demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy." *Hill v. Astrue*, 698 F.3d

1153, 1161 (9th Cir. 2012). One way the ALJ can carry his burden is to "ask[ ] a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting *all* the claimant's limitations, both physical and mental, supported by the record." *Id.* (emphasis added). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (internal quotation marks and citation omitted); *see also Hill*, 698 F.3d at 1162 (holding that vocational expert's opinion could not constitute substantial evidence because the ALJ's hypothetical did not taken into account certain mental limitations).

Two hearings took place before the ALJ in this case due to the remand from the Appeals Council. At the first, the ALJ asked about the availability of jobs for a person with the following limitations: limited education, able to do sedentary, exertional, unskilled work, with no crawling, crouching, climbing, squatting, or kneeling, no exposure to extremes of temperature, humidity or unusual dust, and nothing more than simple reading, writing, and math. (R. at 1297–98.) The vocational expert opined that there were jobs in the state and national economy that such a person could do, and gave one example—a food and beverage order clerk. (*Id.* at 1298.) At the second, the question included the same exertional and environmental limitations described above, but the ALJ did not include the limitation to simple reading, writing, and math. (*Id.* at 1324.) The expert responded that there were jobs, and those included a food and beverage order clerk, printed circuit layout taper, and type copy examiner. (*Id.* at 1325.)

Wendte alleges three errors in the hypothetical posed by the ALJ to the vocational expert at the hearing. First, she claims that the ALJ's hypothetical failed to include the impairment of status post implantation of a defibrillator and pacemaker, with its accompanying environmental limitations. Wendte testified that she is unable to work around microwaves, generators, magnets, power tools, CB radios, or security detectors because of the electromagnetic interference those devices cause with her pacemaker. (*Id.*

at 1331–32.) For example, Wendte acknowledged that she has a special card to be taken aside at airport screening detectors. (*Id.* at 1332.)[6] When those limitations were presented to the vocational expert, she opined that those additional environmental restrictions would "most likely eliminate the three jobs I gave you, assuming that testimony." (*Id.* at 1333.)

The ALJ did not address this testimony. It was error for the ALJ not to discuss Wendte's impairment of status post implantation of a defibrillator and pacemaker—an impairment the ALJ specifically found to be a severe. (*Id.* at 16.) Those devices would have a separate impact on Wendte's ability to perform work. The law is clear that the hypothetical posed to the VE must include all limitations or else it loses its evidentiary value. *See Matthews*, 10 F.3d at 681. Wendte provided uncontradicted testimony on the environmental limitations that accompany her devices. The Court could find nothing in the record that would undermine Wendte's claim that her constant reliance on her pacemaker and defibrillator to live precludes her from consistent and sustained exposure to many devices that appear in common workplaces. The ALJ did not provide any reason for discrediting this testimony about Wendte's environmental restrictions. His decision not to discuss the pacemaker with the VE, and subsequent reliance on her answer to an incomplete hypothetical was in error.

Wendte also claims the ALJ erred by failing to include a moderate limitation in concentration, persistence, and pace in his hypothetical. The ALJ determined that Wendte had "fatigue that sometimes makes it difficult for her to concentrate and stay focused on tasks. Accordingly, she is limited to unskilled work." (R. at 18.) Wendte objects to the ALJ's equating difficulties with concentration, pace, and persistence with an ability to perform unskilled work. Indeed, the Commissioner describes unskilled work as merely

---

[6] Wendte cites a report from InTech on pacemakers to support her testimony at the hearing about the potential of electromagnetic interference. (Doc. 15 at 7 n.4.) While the information contained therein may substantiate Wendte's testimony, review of the ALJ's decision in the district courts is limited the record before the ALJ. Therefore, the Court did not consider the InTech report. Wendte has not cited any other evidence of the electromagnetic issues caused by her pacemaker besides her testimony.

- 10 -

"work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). The Commissioner's definition of "concentration, persistence, or pace" is the "ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* § 404, App. 1 to Subpart P, 12.00(c)(3). The ALJ's assumption that difficulties with concentration, persistence, or pace are solved by limiting the claimant to unskilled work was in error.

The SSA has explained that, "[b]ecause response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job." SSR 85-15. As the Seventh Circuit has put it, the ALJ needed to construct an "accurate and logical bridge" between the mental medical evidence and the decision to account for those mental impairments by limiting the claimant to unskilled work. *Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008).

Here, however, the ALJ did not include any limitations in concentration, persistence, and pace in Wendte's RFC. That error resulted in the insufficiency of the hypothetical posed to the vocational expert. The Ninth Circuit requires vocational expert testimony to incorporate any "concentration, persistence, and pace" deficiencies. *See Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (requiring the vocational expert to consider such limitations, although the ALJ need not state them directly); *Newton v. Chater*, 92 F.3d 688, 695 (9th Cir. 1996) (same). Wendte's difficulties with concentration, persistence, and pace have support in the medical evidence provided by Dr. Tran and Wendte's own testimony, discussed below. Both noted that Wendte had to frequently lie down during the day and that her severe heart problems would likely cause her to miss several days of work a month. (R. at 288–92, 643–47, 649–53, 1272–76, 1319–22.) The ALJ himself found that Wendte had "fatigue that sometimes makes it difficult for her to concentrate and stay focused on tasks." (*Id.* at 18.) The vocational

expert testified that no work would be available for a person with such limitations. (*Id.* at 1326.) While the ALJ rejected the conclusions of Dr. Tran with regard to his disability opinion, the ALJ did not discount Dr. Trans' evaluations of Wendte's limitations in concentration, persistence, and pace. The ALJ therefore erred by failing to include the limitations in concentration, persistence, and pace in his RFC and the hypothetical presented to the VE.

Wendte's final claim of error at step five was that the ALJ failed to specify in his hypothetical that Wendte was limited to simple math and reading. The ALJ informed the vocational expert that Wendte had a "limited" education. (*Id.* at 1324.) The Commissioner defines limited education as having "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs." 20 C.F.R. § 416.964(b)(3). As a rough proxy, the Commissioner "generally consider[s] that a 7th grade through the 11th grade level of formal education is a limited education." *Id.* In contrast, a "marginal" education "means ability in reasoning, arithmetic, and language skills which are needed to do simple, unskilled types of jobs" and the school grade approximation is "formal schooling at a 6th grade level or less." *Id.* § 416.964(b)(2).

Wendte completed the 9th grade, which would qualify as a limited education under the applicable regulation. (R. at 1311–12.) The uncontroverted evidence, however, is that her actual abilities were much lower—Wendte could do math at a third grade level and read at a sixth grade level. (*Id.* at 385–90.) The ALJ therefore erred in classifying Wendte's educational abilities as "limited." That error, however, was harmless. At the first hearing, the ALJ asked the vocational expert a hypothetical where an individual could do "nothing more than simple reading, writing, and math." (*Id.* at 1297-98.) The vocational expert opined that the food and beverage order clerk position would be available, even with those limitations. Therefore, the ALJ's failure to accurately depict Wendte's education was harmless; jobs were still available at Wendte's education level. It would not have had an effect on the ultimate conclusion of no disability.

Nevertheless, the ALJ made material errors at step five by failing to include in his hypothetical to the VE limitations that stemmed from Wendte's pacemaker and defibrillator, and her difficulties with concentration, persistence, and pace. As is evident from the discussion above, those errors were not harmless because the VE testified that those limitations would preclude all employment.

### C. Wendte's Testimony

Wendte claims the ALJ improperly discounted her testimony regarding the severity and impact of her symptoms. Wendte testified at both hearings and submitted several reports on the severity of her symptoms. She testified about numerous operations that have occurred on her heart since childhood. (*Id.* at 1276–81.) She described the same symptoms observed by Dr. Tran—namely, that she experiences dizziness and fatigue while sitting or standing that often causes her to pass out if she does not rest for a period of time. (*Id.* at 1281–83.) These episodes occur around six to seven times each day. (*Id.* at 1317.) She also testified as to her depression. (*Id.* at 1286.)

The standard governing claimant testimony is well-established. If the ALJ has determined (as he has here) that there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged", and there is no evidence of claimant malingering, "then the ALJ must give 'specific clear and convincing reasons' in order to reject the claimant's testimony about the severity of the symptoms." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)); *see also, e.g.*, *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

ALJ did not find Wendte's testimony regarding the extent and severity of her symptoms credible because it was not "supported by the medical evidence of record." (R. at 19.) The ALJ did not cite any specific contradictions at that point in his discussion. "[O]nce a claimant produces objective medical evidence of an underlying impairment, an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v.*

*Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc). The ALJ is required to state specific reasons demonstrating inconsistency and cannot make a general finding that the claimant's testimony lacks objective corroboration. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

The ALJ cited one inconsistency that led to his determination that Wendte was "not fully credible": "the record shows that claimant always has recovered well following these procedures", meaning her heart surgeries. (R. at 19.) That she has recovered well from surgery does not contradict or undermine either the medical evidence or Wendte's own testimony regarding the severity of her regular symptoms. To the extent the ALJ's reference to successful recovery had in mind Wendte's recovery from pacemaker implantation at age 7 in 1987 or her pacemaker replacement at age 12 in November 1992, the Court does not find that reason clear and convincing. Wendte's response to a procedure 26 years ago bears little on the question of whether her current symptoms make her disabled. Nor does her recovery from other operations relate to her ongoing symptoms.

Although the ALJ discusses only this purported inconsistency in the section of his opinion dealing with Wendte's credibility, he later noted Dr. Tran's observations regarding the severity of Wendte's symptoms. Specifically, the ALJ cited the improvement in prognosis and the downgrade in the classification of Wendte's heart symptoms as evidence her symptoms are not as severe. (*Id.* at 20.) Moreover, as discussed above with Dr. Tran, the ALJ cited instances where Wendte reported an absence of disabling symptoms. (*Id.* at 16–17, 20.) While Wendte argues that those were isolated reports, that is a question of evidentiary weight that the regulations leave to the ALJ. This Court determines evidentiary sufficiency, and the reports cited above qualify as substantial evidence to support the ALJ's adverse credibility determination. The ALJ therefore did not commit error when he found Wendte's testimony "not fully credible."

### D. Third-party Statements

A number of third-parties submitted statements or testified at Wendte's hearing.

Wendte's mother, Cindy Newby, testified at the hearing. (*Id.* at 1290–96.) Wendte has been living with her mother since 1999. (*Id.* at 1291.) She testified that Wendte has difficulties doing "everyday thing[s]" and that she experiences dizziness and fatigue daily that requires her to stop what she is doing. (*Id.* at 1292–96.) She testified that Wendte was fired at previous jobs because her illness necessitated frequent breaks. (*Id.* at 1294.) Newby also submitted a third party function report. (*Id.* at 175–83.) In that report, she states that Wendte tires easily, needs lots of naps, cannot stand for significant periods of time, and cannot drive. (*Id.*) Other friends and family submitted statements that contained similar observations. (*Id.* at 250–64, 295–305.) The ALJ gave "limited evidentiary weight" to the testimony and statement of Newby and the other family members and friends because "none of these partial witnesses is either a medical or vocational expert." (*Id.* at 20.) He also lumped together Wendte's testimony with her mother's and deemed it inconsistent with the medical record. (*Id.* at 19.)

Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The Ninth Circuit has held that competent lay witness testimony "cannot be disregarded without comment," *Nguyen*, 100 F.3d at 1467, and that in order to discount competent lay witness testimony, the ALJ "must give reasons that are germane to each witness," *Dodrill*, 12 F.3d at 919. The Commissioner's regulations specifically call for the kind of third-party testimony Wendte submitted. *See* 20 C.F.R. § 404.1545(a)(3).[7]

There is substantial evidence to support the ALJ's decision to discount the testimony of Wendte's mother, Newby. The ALJ stated that her third party statements

---

[7] "We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. . . . We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons."

- 15 -

were not supported by the medical evidence of record. (R. at 19.) As discussed above, the ALJ cited substantial evidence to support that determination in his decision.

Likewise, the ALJ's reason for assigning little weight to the of the other friends and families—that the third parties are not medical or vocational experts—is a germane reason. The ALJ stated that he gave this statements their due consideration but that they did not weigh heavily in the disability determination because the third-party statements did not come from experts. That the Commissioner's regulations expressly call for third-party non-expert testimony does not preclude the ALJ from considering that testimony, but giving it less weight due to its non-expert source. It was therefore not error for the ALJ to discount the opinions of these third parties.

### E. Remedy

The ALJ erred by providing incomplete hypotheticals to the VE at step five. That error prejudiced Wendte's case. The Court must therefore vacate the ALJ's conclusions at step five.

Having decided to vacate the ALJ's decision, the Court has the discretion to remand the case either for further proceedings or for an award of benefits. *See Reddick*, 157 F.3d at 728. The rule in this Circuit is that the Court should:

> credit[] evidence and remand[] for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting [certain] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen*, 80 F.3d at 1292.

Because the Court has concluded that the ALJ's errors were a failure to discuss certain evidence in his decision or present certain evidence to the VE, the appropriate resolution is to remand this case for further proceedings. The ALJ is in the best position to appropriately factor the environmental limitations attendant to a pacemaker and Wendte's difficulties with concentration, persistence, and pace into the step five analysis.

**CONCLUSION**

The ALJ made material error in his decision. Remand for reconsideration in light of this opinion is appropriate.

**IT IS THEREFORE ORDERED** that the ALJ's decision is **VACATED** and this case is **REMANDED** for further proceedings.

Dated this 30th day of May, 2013.

*/s/ G. Murray Snow*
G. Murray Snow
United States District Judge